ACCEPTED
15-25-00096-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/6/2025 3:06 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00096-CV

IN THE FIFTEENTH COURT OF APPEALS
AT AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/6/2025 3:06:40 PM
CHRISTOPHER A. PRINE
Clerk

**CITY OF COLLEGE STATION,**
*Appellant*,

v.

**PUBLIC UTILITY COMMISSION OF TEXAS,**
*Appellee.*

On Appeal from the 200th Judicial Court,
Travis County, Texas
Cause No. D-1-GN-24-005680

## REPLY BRIEF FOR APPELLANT

THOMAS L. BROCATO
State Bar No. 03039030
ROSLYN M. WARNER
State Bar No. 24117520
**LLOYD GOSSELINK
ROCHELLE & TOWNSEND, P.C.**
816 Congress Ave., Suite 1900
Austin, Texas 78701
(512) 322-5800
(512) 472-0532 (fax)
tbrocato@lglawfirm.com
rwarner@lglawfirm.com

ADAM C. FALCO
State Bar No. 24055464
**College Station
City Attorney's Office**
P.O. Box 9960
College Station, Texas 77842
(979) 764-3746
(979) 764-3481 (fax)
afalco@cstx.gov

**ATTORNEYS FOR APPELLANT, CITY OF COLLEGE STATION
ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ....................................................................... 2

INDEX OF AUTHORITIES ............................................................... 4

GLOSSARY OF TERMS .................................................................... 5

STATEMENT REGARDING CITATION FORM .................................. 6

SUMMARY OF REPLY ARGUMENT ................................................. 7

ARGUMENT & AUTHORITIES ......................................................... 9

    A.    The Commission disclaimed its own longstanding application of the TCOS Rule. ................................................. 9

        1.    The Commission's decision invalidates an entire expense category expressly permitted under the TCOS Rule and consistently approved by the Commission. ....................................... 9

        2.    The Commission's decision relies on retroactive application of an unprecedented standard. ................................................................... 12

    B.    The Commission's decision entirely ignores key evidence. .............................................................................. 14

        1.    Absent Commission Staff's intervening actions and three Commission orders, College Station would have maintained a 0% GFT............................................................................ 14

        2.    This case is not the Commission's first opportunity to review and invalidate College Station's GFT. ............................................................. 18

    C.    The Commission's failure to find good cause is an abuse of discretion.................................................................. 21

        1.    Despite the statutory requirement to do so, the Commission provided no explanation for rejecting good cause. ................................................. 22

2. The Commission's decision is unnecessarily punitive and inequitable. .............................. 24

CONCLUSION AND PRAYER ........................................................ 26

CERTIFICATE OF COMPLIANCE .............................................. 29

INDEX OF APPENDICES ............................................................ 30

# INDEX OF AUTHORITIES

**Statutes**

Tex. Gov't Code § 2003.049(h)........................................................ 22, 24

**Rules and Regulations**

16 Tex. Admin. Code § 25.192(h)(1) ................................................ 10, 11

16 Tex. Admin.Code § 25.192(h)(2) ....................................................... 25

# GLOSSARY OF TERMS

| | |
|---|---|
| **ALJs** | Administrative Law Judges Cassandra Quinn and Daniel Wiseman |
| **APA** | Administrative Procedure Act |
| **AR** | Administrative Record |
| **College Station** | City of College Station, a Municipally-Owned Utility |
| **Commission or PUC** | Public Utility Commission of Texas |
| **CR** | Clerk's Record |
| **ERCOT** | Electric Reliability Council of Texas |
| **Final Order** | Order on Rehearing issued July 11, 2024 |
| **FOF** | Finding of Fact |
| **GFT** | General Fund Transfer |
| **MOU** | Municipally-Owned Utility |
| **PFD** | Proposal for Decision |
| **ROI** | Return on Investment |
| **RR** | Reporter's Record |
| **TCOS** | Transmission Cost of Service |
| **TCOS Rule** | 16 Texas Administrative Code § 25.192 |
| **TSP** | Transmission Service Provider |

## STATEMENT REGARDING CITATION FORM

Citations to the Clerk's Record, if any, are stated in the following form: CR at [page number]. The Administrative Record is part of the Reporter's Record and, accordingly, citations to the Administrative Record are stated in the following form: RR, AR [item number] at [page number]. All citations to CR, RR, and AR will cite to Bates number pages when Bates number pages are available. Otherwise, citations refer to the document's original page numbers.

## SUMMARY OF REPLY ARGUMENT

To reach its conclusion in this case, the Commission necessarily had to reverse its own longstanding application of the TCOS Rule and unlawfully revoke an entire expense category it has never prohibited, or even *limited*, in any prior TCOS case. In addition, the Commission used this case to formulate a new standard under the TCOS Rule and then applied it to College Station retroactively under the guise that the standard has always been the Commission's approach to GFTs in transmission rates. This claim has no grounding in the evidence and, in fact, the evidence clearly showed that no such standard existed when College Station filed its interim applications. If the standard applied here had legitimately existed as Commission policy prior to this case, PUC Staff would not have advised College Station to include a GFT and the Commission would not have approved College Station's interim TCOS applications.

Despite the Commission's argument that this proceeding is the first opportunity to evaluate College Station's GFT inclusion, College Station's request to increase its GFT in transmission rates from the 0% approved in PUC Docket No. 15762 was plainly before PUC Staff and the

Commission in three separate prior proceedings. PUC Staff instructed College Station to include a GFT in the first place and ultimately recommended approval of the GFT with no indication that it intended the expense to be subject to reconciliation nearly two decades later. On three occasions, the Commission approved the GFT with the knowledge that it was an increase from the previously approved 0%.

The Commission baselessly ignored the key facts in evidence and failed to provide an explanation for doing so. The Commission similarly rejected the overwhelming evidence of good cause weighing against a refund even though the Commission has a statutory obligation to explain the factual and legal bases for rejecting an administrative law judge's recommendations.

In a final order that defies logic, the Commission recognized that College Station acted in good faith, among numerous other findings supporting a mitigated or zero sum refund, and then ordered the most punitive outcome possible. The Commission abused its discretion to impose a harmful and arbitrary punishment on College Station. The Final Order should be reversed and remanded to correct this inequitable result.

## ARGUMENT & AUTHORITIES

**A.  The Commission disclaimed its own longstanding application of the TCOS Rule.**

The Commission, without exception, has long treated GFTs as a permissible expense within a specific category enumerated in its rules. Instead of acknowledging this longstanding approach and properly implementing new policy prospectively, the Commission disclaimed its prior rule interpretation, created a new standard for evaluating GFT inclusions, and retroactively applied the standard to College Station nearly twenty years after College Station first transparently identified that it was including a GFT in an interim filing. The result is a categorical disallowance of an entire expense category available to all other MOUs except for College Station. The Commission's failure to recognize and apply its own historical application of the TCOS Rule should not be conflated with reconciliation under the TCOS Rule.

*1.  The Commission's decision invalidates an entire expense category expressly permitted under the TCOS Rule and consistently approved by the Commission.*

The record is clear—even though a GFT is not a tax, it may be classified as "other associated taxes" for purposes of a MOU's transmission rates. (RR, AR 200 at 7:19-21.) "Other associated taxes" is

9

an expense category expressly allowed in interim updates under the TCOS Rule. 16 Tex. Admin. Code (TAC) § 25.192(h)(1). Irrespective of whether a GFT was first included in a comprehensive TCOS filing, the Commission's practice since the current transmission framework was put in place over 30 years ago has been to allow MOUs to recover a GFT within this category. Commission Staff's expert witness, Ruth Stark, confirmed that GFTs are commonly known as "other associated taxes" and that a GFT often appears in the TCOS schedule corresponding to this category. (AR 173 at 39:13-40:2.) Ms. Stark also confirmed the Commission's history of issuing orders authorizing MOUs to include a GFT as "other associated taxes". (RR, AR 173 at 62.) There is no evidence in the record contrary to Ms. Stark's testimony. Despite arbitrarily reaching a conflicting conclusion, the Commission affirmed this longstanding application of its rules in the Final Order. (RR, AR 167 at 11, FOF 47, which states, "[g]eneral fund transfers have been . . . included in the revenue requirement as a separate expense item, most often appearing in the "other taxes" line item.")

Based on this established practice, the Commission's decision to impose a full refund goes beyond the bounds of reconciliation

10

contemplated under the TCOS Rule. By suddenly changing its interpretation of the TCOS Rule to revoke inclusions College Station began requesting nearly twenty years ago, the Commission effectively deleted an entire expense category from the rule and applied this modification to a single party. As a parallel, the TCOS Rule provides that in an interim filing a TSP should update for values reflecting transmission facility additions. 16 TAC § 25.192(h)(1). In a subsequent comprehensive TCOS proceeding, the Commission will review the prudence of these plant costs and evaluate whether certain plant expenditures were necessary. But the Commission could not outright invalidate the entire category of "transmission facility additions" as doing so would inappropriately modify the plain language of the TCOS Rule.

The Commission entirely denied College Station's recovery of an expense category the Commission has never prohibited before. Contested cases may be used as a mechanism for interpreting and applying agency rules, but the Commission cannot suddenly retract its own longstanding interpretation of the TCOS Rule and retroactively impose the consequences of that change on one party.

11

## 2. *The Commission's decision relies on retroactive application of an unprecedented standard.*

The Commission claims the TCOS Rule does not permit inclusion of a GFT in an interim TCOS filing if the GFT was not first included in a comprehensive TCOS filing. (Appellee's Br. at 21.) This standard is not stated in the TCOS Rule or in any other governing rule or law or case. (RR, AR 183 at 9.) Rather, it is an interpretation of the TCOS Rule the Commission developed and applied for the first and only time in this proceeding. The Commission has only two options for lawfully applying this new standard – it could have applied its interpretation when College Station first sought inclusion of a GFT (after receiving instructions from PUC Staff to do so); or it can implement the new standard prospectively in future TCOS cases.

Prior to the Commission's decision in this case, College Station had only the following guidance for including a GFT in its interim TCOS applications: (1) PUC Staff's specific instructions to include a GFT; (2) the Commission's repeated assent to the inclusion in three separate orders; and (3) the Commission's undisputed pattern and practice of approving all requested GFTs as either "other associated taxes" or as a return component. (RR, AR 173 at 40:10-23.) The claim that College

12

Station's GFT had to first be approved in a comprehensive TCOS proceeding is at odds with the fact that no such approach was applied, or ever mentioned, when College Station first requested inclusion of a GFT in 2007, in any of the two interim proceedings thereafter, or in *any* prior case. There is additionally no logical reason justifying this approach.

The Commission argues that PUC Staff treats "other associated taxes" the same as depreciation expenses and rate of return, and that any update to these values in an interim TCOS proceeding should correspond to the percentage approved in the last comprehensive case. (Appellee's Br. at 20.) Notably, however, PUC Staff did not take this approach when it instructed College Station to request its GFT and it did not enforce this approach in either of College Station's subsequent interim filings. Moreover, this premise fails to consider that under the facts of this case the "other associated taxes" category could not have ever been treated the same as depreciation and rate of return because it would have always been 0%. PUC Staff was aware of this through the correspondence leading up to College Station's interim filings. And the Commission was aware of this when it was clearly stated in the interim testimony and schedules. The record made clear that College Station *would have filed*

13

*a comprehensive to include a GFT* if the policy retroactively enforced in this proceeding had been in place when it first filed an interim application. (RR, AR 184 at 14:8-14.) But no such standard existed.

**B.  The Commission's decision entirely ignores key evidence.**

In its response brief, the Commission explains how courts applying the arbitrary-and-capricious standard look to, among other things, whether an agency has "taken a hard look at the salient problems." (Appellee's Br. at 16.) Here, the facts surrounding College Station's first request for inclusion of a GFT in 2007 are crucial for evaluating whether the Commission undertook appropriate, evidence-based analysis. Rather than giving these key facts *any* weight, the Commission rejected the evidence as a whole and did so without explanation or justification.

*1.  Absent Commission Staff's intervening actions and three Commission orders, College Station would have maintained a 0% GFT.*

Many of the most essential facts presented in this case relate to the origin of why College Station began including a GFT in its transmission rates in the first place. The Commission asserts that College Station sought guidance on how to proceed regarding its GFT. (Appellee's Br. at 40.) But the GFT inclusions at issue in this case did not spur from College

14

Station's actions. To the contrary, Commission Staff, *sua sponte*, directed College Station to include a GFT in its TCOS.

The evidence established that College Station had no intention of including a GFT in its 2007 interim TCOS application and only began requesting a GFT in its TCOS at the behest of Commission Staff. Specifically, when College Station sought clarification regarding the depreciation schedule, longtime PUC expert Glenda Spence independently instructed College Station to remember to include its GFT. (RR, AR 184 at 16.) College Station questioned this because no such amount was included in the original filing. (RR, AR 184 at 16.) Despite this, Ms. Spence told College Station to include the amount even if it was not in the original filing and to explain it. (RR, AR 184 at 16, 22.) College Station did just that. (*See* RR, AR 184 at 46-47, 64, 73.)

College Station acknowledged numerous times in correspondence with PUC Staff, draft schedules, and written testimony that the proportion of GFT allocated to transmission in its original comprehensive TCOS application was zero. In rebuttal testimony, College Station's notes for the 2007 interim filing explained that it would "use[] *current numbers* for distribution and transmission net plant instead of the

15

percentages in the original filing . . . because this amount was more current *and the ROI was not included in the original filing, therefore the percentage was not calculated in 1996.*" (RR, AR 184 at 17 (emphasis added).) College Station consulted with Ms. Spence on this approach, and she confirmed the use of current numbers, instead of the numbers from PUC Docket No. 15762, was the best, most conservative approach. (RR, AR 184 at 29.) The Commission's Director of Rate Regulation similarly agreed with the use of current numbers instead of the numbers from PUC Docket No. 15762. (RR, AR 184 at 58.) The Commission and its staff had unequivocal notice of the impact of College Station's GFT inclusion and yet, encouraged and approved the change.

The deviation from 0% GFT was plainly in front of the Commission during all three of College Station's interim proceedings. In addition to College Station's transparency in testimony and schedules, Ms. Spence reached out to College Station during the review of the 2008 application asking about the GFT. (RR, AR 184 at 65.) After she had indicated that the GFT was specifically under review, Ms. Spence's subsequent memo recommending approval of the 2008 application stated that a future accounting determination would assess "the appropriateness of new

16

transmission facilities" and that only "transmission facilities additions" would be subject to a more comprehensive analysis and reconciliation. (RR, AR 184 at 78.) After instructing College Station to begin including a GFT, indicating that the inclusion was under specific review, and filing the recommendation memo, there was zero indication in the record that PUC Staff had any intent of subjecting College Station's GFT inclusions to future review and reconciliation. Consistent with this, the Commission issued orders approving the applications. (RR, AR 184 at 53-57, 68-72, 74-77.)

None of the Commission's interim orders acknowledged the unique GFT question at issue. The Commission did not comment on the fact (stated plainly in College Station's testimony) that no GFT was included in the original comprehensive filing. If the Commission had truly held an intent to invalidate the GFT inclusions on the basis described in the Final Order, it is inconceivable that the GFTs would have been approved as inclusions in three interim TCOS filings. Multiple seasoned PUC subject matter experts gave instruction contrary to the Commission's "standard" used in this proceeding. Moreover, it would have to be the case that not a single commissioner with decision-making power

17

conducted a review of the interim testimony or schedules. The Commission's decision to order a full refund in this case is not supported by any reference to or analysis of the key facts in the record. The Commission erroneously opted to disregard the salient history giving rise to College Station's GFT inclusions.

### 2. *This case is not the Commission's first opportunity to review and invalidate College Station's GFT.*

The Commission continually makes the disingenuous assertion that this application is the first time the Commission has confronted the issue of College Station's GFT inclusions. (Appellee's Br. at 31-32.) However, the first time a MOU included a GFT in an interim TCOS application that was not included in a previous comprehensive TCOS application was in College Station's 2007 interim proceeding. In that case, College Station followed the instructions it received from PUC Staff and made every effort to present the GFT inclusion clearly in its interim filings so that the Commission could evaluate the increase from a 0% GFT. Without any acknowledgement of this or the three interim orders where it knowingly allowed a GFT higher than zero, the Final Order relieves the Commission of any regulatory accountability and shifts all responsibility for the unique history of this case to College Station.

As discussed above, the key facts leading to College Station's request to include a GFT in its transmission rates transpired decades ago. The issue of whether College Station's GFT inclusion was appropriate in an *interim* TCOS application was before the Commission three times prior to this case, in three *interim* TCOS proceedings. The Commission points to Ms. Stark's expert witness analysis as the only evidentiary basis for its decision, but Ms. Stark's ultimate recommendation properly acknowledged that the key facts were readily available beginning in 2007. (*See* RR, AR 201, wherein Ms. Stark revised her recommendation for a full refund after reviewing the evidence in College Station's rebuttal testimony.) The expert the Commission relies on modified her recommendation for College Station to issue a full refund and knew that, given the facts in the record, ordering College Station to refund more than six times its annual revenue requirement would be unjust.

The Commission argues that the fault lies with College Station for waiting too long to file a second comprehensive TCOS application. (Appellee's Br. at 40.) Per the Commission's own findings in this case, however, College Station acted in good faith and the Commission cannot

19

point to any evidence to show that College Station took efforts to "forestall the Commission's review and interpretation of the application of the TCOS Rule." (Appellee's Br. at 38.) It is simply false to claim the Commission did not have the opportunity to apply the TCOS Rule in the 2007, 2008, and 2017 interim filings. Further, by the Commission's logic, College Station should be punished for failing to follow rules and timelines that did not exist. At the time of College Station's interim filings, there was no requirement that it had to first request a GFT in a comprehensive filing and there was no requirement for College Station to file comprehensive cases on a set frequency (nor is there any requirement today). The Commission knew College Station was requesting a GFT in transmission rates for the first time in 2007 and the Commission consciously and repeatedly allowed it.

The Commission claims that PUC Staff's statements to College Station regarding the GFT in the interim filings "pointed towards a future determination by the Commission." (Appellee's Br. at 38.) In other words, a utility receiving specific instructions from agency staff was supposed to ignore those instructions and instead rely on unclear implied meanings. The purpose of identifying the GFT increase in testimony

20

beginning in 2007, as directed by PUC Staff, was so that the Commission could review the inclusion *in that proceeding*. The Commission also speculates on the import of College Station's involvement in another utility's rate proceeding around the time of PUC Docket No. 15762. (*See* Appellee's Br. at 28.) This fact is irrelevant and provides no conclusive evidence of any material fact. The Final Order itself specifically found that College Station acted in good faith and the evidence clearly supported this. (RR, AR 167 at 13, FOF 61.)

The Commission's new standard that a GFT must first be requested in a comprehensive TCOS filing was not in place when PUC Staff directed College Station to include a GFT. If the "proper method" at the time was for College Station to file a comprehensive case, then PUC Staff would have instructed this before the 2007 filing or the Commission would have rejected College Station's interim update and ordered College Station to file a comprehensive application.

## C. The Commission's failure to find good cause is an abuse of discretion.

The weight of the evidence in this case favored a good cause exception to requiring a refund. The Commission ignored this evidence and provided no explanation for its unwillingness to support good cause.

This means the Commission provided *no basis* for rejecting an uncontested settlement agreement, PUC Staff's recommendation, the ALJs' recommendation, and a clear presentation of the facts surrounding College Station's decision to request a GFT. Under Texas law, the Commission is required to explain when it diverges from the findings and conclusions made by an administrative law judge. The Commission failed to meet its statutory obligation and made no effort to weigh the interests at stake.

1. ***Despite the statutory requirement to do so, the Commission provided no explanation for rejecting good cause.***

In briefing, the Commission notes that, unlike other state agencies, it has the authority to assume an original fact-finding role. (Appellee's Br. at 44.) Regardless of how the Commission's authority to modify an administrative law judge's findings compares to other state agencies' authority to do so under the APA, the Commission has a statutory obligation to provide the "specific reason and legal basis" for changing an administrative law judge's findings or conclusions or vacating or modifying an administrative law judge's decision. Tex. Gov't Code § 2003.049(h).

In the Final Order, the Commission made only three conclusory statements addressing whether good cause existed for a mitigated refund:

- "The Commission rejects the PFD's recommendation that Commission Staff's communications or College Station's good faith are circumstances that constitute good cause to grant an exception to the full refund required by the rule." (RR, AR 167 at 4.)

- "Finding of fact 68 is modified because the Commission does not find that good cause exists." (RR, AR 167 at 5.)

- "Conclusion of law 12 and 13 are deleted as inapplicable because the Commission is not exercising discretion to order a mitigated refund and carrying charges." (RR, AR 167 at 6.)

As illustrated by these limited statements, the Commission did not provide an explanation or "specific reason" for *why* it rejected the PFD's recommendation to find good cause, nor did it provide a legal basis.

The Commission's error is particularly confounding because it specifically incorporated aspects of the evidence supporting good cause into the Final Order when it found that "College Station acted in good

23

faith and did not willfully or intentionally violate the Commission's rules or policies." (RR, AR 167 at 13.) The Final Order additionally confirmed that GFT inclusions originated based on the instruction of PUC Staff with their knowledge that no GFT was included in PUC Docket No. 15762 (RR, AR 167 at 11) and that a full refund would have a significant impact on College Station (RR, AR 167 at 13.) The Commission's claimed legal basis before this Court is that College Station failed to meet its burden to establish a good cause exception to the refund requirement. (Appellee's Br. at 45-46.) This is yet another explanation with no meaning and, even if it were a sufficient legal basis, it was not included in the Final Order. After evaluating the evidentiary record, PUC Staff and the ALJs both supported a finding of good cause. (RR, AR 134 at 2; AR 201 at 2.) The Commission departed from these evidence-based recommendations without any explanation or basis, thus failing to uphold its duty under Tex. Gov't Code § 2003.049(h).

### 2. The Commission's decision is unnecessarily punitive and inequitable.

One of the clearest markers of an abuse of discretion in this proceeding is the Commission's unyielding, all-or-nothing approach, resulting in an overtly punitive refund. The Commission did not engage

24

in any meaningful weighing of the evidence and instead started with its chosen conclusion—to punish College Station by revoking its GFT inclusions—and then worked backwards to create reasoning for that conclusion.

While the Commission's conclusion is not sufficiently grounded in the evidence, the evidence *did* support a number of more reasonable and equitable conclusions than the result in the Final Order. For example, in recognition of the compelling good cause circumstances, Commission Staff's expert witness recommended a $6.6 million refund (RR, AR 201 at 2) and the uncontested settlement provided for a $3.9 million refund (RR, AR 192 at 2.) The ALJs, after conducting a hearing and examining multiple rounds of briefing, concluded that a $900,000 refund was appropriate. (RR, AR 134 at 2, 46.) Moreover, under the TCOS Rule, the only item the Commission is *required* to review for reasonableness and necessity under the reconciliation subsection of the TCOS Rule is interim plant additions. 16 TAC § 25.192(h)(2). Even though good cause was illustrated in numerous ways throughout the record, the Commission chose to turn a blind eye to the evidence and exceed the minimum required scope of a comprehensive TCOS proceeding to impose a penalty

on College Station for including an expense the Commission had full knowledge of in three proceedings before this one.

The Commission paints an inaccurate picture of the interests impacted by its decision in this case. The impact of College Station's GFT inclusions on ERCOT ratepayers is nominal, whereas the full refund requirement has a severe financial impact on College Station. (*See* RR, AR 87 at 20-21.) At a minimum, the Commission's own precedent shows that College Station would have received approval to include *some* GFT in its transmission rates if, under the Commission's rationale, it had first requested it in PUC Docket No. 15762.

This decision goes far beyond a need to deter utilities from "adding inappropriate items to interim transmission rates." (*See* Appellee's Br. at 43.) The crucial precedential opportunity in this case is to deter the Commission from punishing one party as a remedy for the consequences of the Commission's own past actions.

## **CONCLUSION AND PRAYER**

The Commission used this case to make up a new standard for evaluating the inclusion of a GFT in TCOS rates and then retroactively applied it to the GFT College Station began lawfully including in its

transmission rates nearly two decades ago. This decision is inconsistent with the Commission's historic interpretation of its own rules and in inexplicable conflict with the key facts surrounding College Station's inclusion of a GFT in its transmission rates. Furthermore, the Commission's failure to find good cause for a mitigated refund constitutes an abuse of discretion. Accordingly, College Station respectfully asks this Court to reverse and remand the Commission's decision ordering College Station to issue a refund for its inclusion of a GFT. College Station further requests any other relief to which it is entitled.

Respectfully submitted,

**LLOYD GOSSELINK
ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701
(512) 322-5800 Phone
(512) 472-0532 Facsimile

By: _____
THOMAS L. BROCATO
State Bar No. 03039030
tbrocato@lglawfirm.com
ROSLYN M. WARNER
State Bar No. 24117520
rwarner@lglawfirm.com

and

ADAM C. FALCO
State Bar No. 24055464
afalco@cstx.gov
City Attorney
College Station City Attorney's
Office
P.O. Box 9960
College Station, Texas 77842
(979) 764-3746 Phone
(979) 764-3481 Facsimile

**ATTORNEYS FOR APPELLANT**

28

## CERTIFICATE OF COMPLIANCE

I, Thomas Brocato, attorney for Appellant, certify that this document was generated by a computer using Microsoft Word, which indicates that the word count of this document is <u>4,406</u> per Tex. R. App. P. 9.4(i).

_____
THOMAS L. BROCATO

# INDEX OF APPENDICES

**Appendix A**    Texas Government Code § 2003.049

# APPENDIX A

*Tex. Gov't Code § 2003.049*

\*\*\* This document is current through the 2025 Regular Session, the 1st C.S. and the 2nd C.S. of the 89th Legislature with the exception of 3 bills. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis®* > *Government Code* > *Title 10 General Government (Subts. A — Z)* > *Subtitle A Administrative Procedure and Practice (Chs. 2001 — 2050)* > *Chapter 2003 State Office of Administrative Hearings (Subchs. A — Z)* > *Subchapter C Staff and Administration (§§ 2003.041 — 2003.057)*

## Sec. 2003.049. Utility Hearings.

(a) The office shall perform contested case hearings for the Public Utility Commission of Texas as prescribed by the Public Utility Regulatory Act of 1995 and other applicable law.

(b) The office shall conduct hearings relating to contested cases before the commission, other than a hearing conducted by one or more commissioners. The commission by rule may delegate the responsibility to hear any other matter before the commission if consistent with the duties and responsibilities of the office.

(c) The office may contract with qualified individuals to serve as temporary administrative law judges as necessary.

(d) To be eligible to preside at a hearing, an administrative law judge, regardless of temporary or permanent status, must be licensed to practice law in this state and have not less than five years of general experience or three years of experience in utility regulatory law.

(e) At the time the office receives jurisdiction of a proceeding, the commission shall provide to the administrative law judge a list of issues or areas that must be addressed. In addition, the commission may identify and provide to the administrative law judge at any time additional issues or areas that must be addressed.

(f) The office and the commission shall jointly adopt rules providing for certification to the commission of an issue that involves an ultimate finding of compliance with or satisfaction of a statutory standard the determination of which is committed to the discretion or judgment of the commission by law. The rules must address, at a minimum, the issues that are appropriate for certification and the procedure to be used in certifying the issue. Each agency shall publish the jointly adopted rules.

Tex. Gov't Code § 2003.049

**(g)** Notwithstanding Section 2001.058, the commission may change a finding of fact or conclusion of law made by the administrative law judge or vacate or modify an order issued by the administrative law judge only if the commission:

  **(1)** determines that the administrative law judge:

  **(A)** did not properly apply or interpret applicable law, commission rules or policies, or prior administrative decisions; or

  **(B)** issued a finding of fact that is not supported by a preponderance of the evidence; or

  **(2)** determines that a commission policy or a prior administrative decision on which the administrative law judge relied is incorrect or should be changed.

**(h)** The commission shall state in writing the specific reason and legal basis for its determination under Subsection (g).

**(i)** An administrative law judge, on the judge's own motion or on motion of a party and after notice and an opportunity for a hearing, may impose appropriate sanctions as provided by Subsection (j) against a party or its representative for:

  **(1)** filing a motion or pleading that is groundless and brought:

  **(A)** in bad faith;

  **(B)** for the purpose of harassment; or

  **(C)** for any other improper purpose, such as to cause unnecessary delay or needless increase in the cost of the proceeding;

  **(2)** abuse of the discovery process in seeking, making, or resisting discovery; or

  **(3)** failure to obey an order of the administrative law judge or the commission.

**(j)** A sanction imposed under Subsection (i) may include, as appropriate and justified, issuance of an order:

  **(1)** disallowing further discovery of any kind or of a particular kind by the offending party;

  **(2)** charging all or any part of the expenses of discovery against the offending party or its representative;

  **(3)** holding that designated facts be deemed admitted for purposes of the proceeding;

  **(4)** refusing to allow the offending party to support or oppose a designated claim or defense or prohibiting the party from introducing designated matters in evidence;

Tex. Gov't Code § 2003.049

**(5)** disallowing in whole or in part requests for relief by the offending party and excluding evidence in support of such requests;

**(6)** punishing the offending party or its representative for contempt to the same extent as a district court;

**(7)** requiring the offending party or its representative to pay, at the time ordered by the administrative law judge, the reasonable expenses, including attorney's fees, incurred by other parties because of the sanctionable behavior; and

**(8)** striking pleadings or testimony, or both, in whole or in part, or staying further proceedings until the order is obeyed.

**(k), (l)** [Repealed by *Acts 2015, 84th Leg., ch. 228 (H.B. 2154), § 26(1),* effective September 1, 2015.]

## History

Enacted by *Acts 1995, 74th Leg., ch. 765 (S.B. 373), § 1.35*, effective September 1, 1995; am. *Acts 1997, 75th Leg., ch. 165 (S.B. 898), § 31.01(49)*, effective September 1, 1997 (renumbered from Sec. 2003.047); am. *Acts 1999, 76th Leg., ch. 85 (S.B. 757), § 10*, effective September 1, 2000; *Acts 2015, 84th Leg., ch. 228 (H.B. 2154), §§ 9*, 10, 26(1), effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Michelle Felker on behalf of Thomas Brocato
Bar No. 03039030
mfelker@lglawfirm.com
Envelope ID: 106499253
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief for Appellant
Status as of 10/6/2025 3:14 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Thomas LBrocato | | tbrocato@lglawfirm.com | 10/6/2025 3:06:40 PM | SENT |
| John Hulme | 10258400 | John.Hulme@oag.texas.gov | 10/6/2025 3:06:40 PM | SENT |
| Jordan Pratt | 24140277 | jordan.pratt@oag.texas.gov | 10/6/2025 3:06:40 PM | SENT |
| Roslyn M.Warner | | rwarner@lglawfirm.com | 10/6/2025 3:06:40 PM | SENT |
| Justin Swearingen | | justin.swearingen@opuc.texas.gov | 10/6/2025 3:06:40 PM | SENT |
| Chris Ekoh | | chris.ekoh@opuc.texas.gov | 10/6/2025 3:06:40 PM | SENT |
| Benjamin Barkley | | benjamin.barkley@opuc.texas.gov | 10/6/2025 3:06:40 PM | SENT |
| Adam Falco | | afalco@cstx.gov | 10/6/2025 3:06:40 PM | SENT |
| OPUC  Eservice | | opuc_eservice@opuc.texas.gov | 10/6/2025 3:06:40 PM | SENT |
| David Laurent | | david.laurent@oag.texas.gov | 10/6/2025 3:06:40 PM | SENT |